# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 13 CR 878-1 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| DAVID CARTER, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant David Carter's notice of intoxication defense and request for pretrial ruling on admissibility of evidence and jury instruction [24] and on the Government's motion to exclude argument regarding intoxication [26]. For the reasons set forth below, the Court grants in part and denies in part both motions [24 and 26].

### I. Background

According to Defendant David Carter, he has a lifelong history of homelessness and a lengthy, well-documented history of alcoholism. In 2008, Carter was charged with robbing the Community Bank located on W. 35th Street in Chicago, and, in 2010, he was sentenced to 77 months in prison. Prior to June 12, 2013, Carter was released to a Salvation Army halfway house to serve the remainder of his sentence. He was permitted to leave during the day, but had a nightly curfew. On June 12, 2013, the halfway house notified the United States Marshals that Carter did not return at curfew.

On October 30, 2013, David Carter was charged in a two-count indictment with (1) escaping the halfway house in violation of 18 U.S.C. § 751(a) (Count One) and (2) attempted bank robbery in violation of 18 U.S.C. § 2113(a) (Count Two). As to Count 2, the indictment alleges that on June 14, 2013, 2 days after he failed to return for curfew, Carter robbed the

1

Community Bank again. According to the indictment, at approximately 1:45 p.m. on June 14, Carter entered the bank and approached an area staffed by two bank employees. Carter who allegedly was slurring his words and struggling to stand upright, told one of the bank employees that he had forgotten something at home. Carter then left the bank and returned approximately 10 minutes later. At that point, he allegedly handed an employee a crinkled piece of paper that said, "I NEED $20,000 OR I WILL SHOOT YOU." The employee told Carter that they did not keep money in her area of the bank, and Carter responded, "Okay, okay," and then walked out of the bank.

FBI agents located Carter at Hines Veterans Administration hospital ("Hines") four days after the robbery; he had been there since June 16, 2013. Following the robbery attempt, on June 16, Carter allegedly was taken via ambulance to a hospital where doctors determined that he was suffering from suicidal ideations and depression and was severely intoxicated.[1] He then voluntarily checked himself into Hines, was admitted to the psychiatric ward ("2 South") at Hines, a "lockdown" section of the hospital, and was treated for depression and alcoholism.[2]

On June 18, FBI Agent Sean Burke confirmed that Carter was located at Hines, went to Hines, secured a written waiver of Carter's *Miranda* rights, and then interviewed Carter. According to the Government, Carter admitted to the agents that he fled the Salvation Army halfway house on June 12. He said that he started drinking heavily after fleeing and had slept in a vacant lot near the bank on the night of June 13. He said that he did not have a recollection of June 14, the day of the robbery, other than drinking heavily. Agents also showed Carter surveillance photographs from the robbery. During the suppression hearing, FBI Agent Sean

---

[1] Carter's blood alcohol level was .20.

[2] When an individual is in the lockdown section, they cannot leave unless medically cleared to do so. Because Carter was a voluntary patient, he could have requested release, but he still would have needed to be medically cleared by the staff prior to discharge.

Burke testified that Carter identified himself as the individual depicted in two photos.  Carter consented to the seizure of the clothing that he was wearing when he checked into the hospital, which he said he had worn since leaving the halfway house.

Carter was medically cleared for release on June 21, 2013, at which point he was taken into police custody.  Carter represents to the Court that he anticipates going to trial on the attempted bank robbery charge, but will enter a plea of guilty to escape as charged in Count One of the indictment, pursuant to a written plea declaration.

**II.     Analysis**

Carter seeks to argue a defense to attempted bank robbery:  specifically, that he could not form the requisite intent to commit the crime because he was intoxicated at the time of the offense.  He also intends to argue that his drunkenness bears on an element of the crime of attempted bank robbery:  namely, that he was too drunk to actually intimidate or threaten anyone, including the bank teller to whom he allegedly handed a demand note.  The Government maintains that voluntary intoxication is not a defense to attempted bank robbery, a general intent crime, and requests that the Court instruct the jury that intoxication is not a defense to attempted bank robbery and bar the defense from arguing intoxication in defense.  The Government's motion, although it focuses on the intent issue, asks the Court to exclude "argument regarding intoxication"; thus, presumably the Government also seeks to bar Defendant from using his intoxication to negate an element of the crime.  The Court will address the two issues in turn.

**A.     Intent**

Carter has been charged with attempted bank robbery. At common law, attempt offenses carry a requirement that the defendant specifically intend to commit the underlying crime. See *United States v. Cote*, 504 F.3d 682, 687 (7th Cir. 2007). "In general, the crime of attempt

requires the specific intent to commit a crime and a substantial step towards the commission of that crime." *United States v. Johnson*, 376 F.3d 689, 693 (7th Cir. 2004); see also *United States v. Fiedeke*, 384 F.3d 407, 411 (7th Cir. 2004) (agreeing that specific intent instruction appropriate on the charge of attempted drug possession); *United States v. Bailey*, 227 F.3d 792, 797 (7th Cir. 2000) (to prove attempt, the government must show specific intent to complete the underlying crime); *Welch v. United States*, 604 F.3d 408, 418 (7th Cir. 2010) ("'attempt' is a specific intent crime").

Intoxication is a defense to specific intent crimes, but it is not a defense to general intent crimes. See *United States v. Reed*, 991 F.2d 399, 400–01 (7th Cir. 1993). Thus, whether Carter may assert an intoxication defense turns upon whether attempted bank robbery is a specific or general intent crime. Section 2113(a), the statute under which the Government indicted Carter, states as follows:

> (a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or
>
> Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—
>
> Shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a). Section 2113(a) contains two paragraphs. The first makes it an offense, by force and violence, or by intimidation, to take or attempt to take money from a bank. *Id.* The second, which makes it an offense to "enter any bank * * * with intent to commit in such bank * * * any felony affecting such bank," does not include a force or intimidation component. *Id.*

4

The second paragraph of § 2113(a) quite clearly specifies an intent element, while the first paragraph does not.

Courts reviewing the statute in completed bank robbery cases have determined that Congress showed "careful draftsmanship" in including an intent element in the second paragraph, but not the first. See, *e.g., United States v. Gonyea*, 140 F.3d 649, 653–54 (6th Cir. 1998) (determining that completed bank robbery was a general intent crime based upon text of statute); *United States v. Brown*, 547 F.2d 36, 38–39 (3d Cir. 1976) (same); *United States v. DeLeo*, 422 F.2d 487, 490 (1st Cir. 1970) (same). Applying the same rationale, the Eighth and Tenth Circuit have concluded that attempted bank robbery, an offense described in the first paragraph of § 2113(a), is a general intent crime, foreclosing an intoxication defense. See *United States v. Johnston*, 543 F.2d 55, 57–58 (8th Cir. 1976) ("A simple comparison of the language in the two paragraphs of § 2113(a) convinces us that Congress chose to define the second paragraph in terms of specific intent and consciously did not include language of specific intent in the first paragraph * * * * We conclude that the trial court was correct in refusing to instruct the jury that specific intent was an element of the offense charged."); *United States v. Armstrong*, 1997 WL 337540 (10th Cir. 1997) (unpublished habeas case). Conversely, the Ninth Circuit has concluded that attempted bank robbery, like common law attempt offenses, is a specific intent crime. See *United States v. Darby*, 857 F.2d 623, 625-27 (9th Cir. 1988); see also *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1193 (9th Cir. 2000) ("[E]ven though bank robbery itself is a general intent crime * * * attempted bank robbery requires the specific intent to rob a bank within the meaning of 18 U.S.C. § 2113(a)."). In *United States v. Durham*, the Seventh Circuit noted that, while the parties "presume[d] that attempted bank robbery under $ 2113(a) is a specific intent crime because at common law, attempt offenses carry a requirement that the defendant

specifically intend to commit the underlying crime," "[n]either this Court nor the Supreme Court has decided whether specific intent is an essential element of attempted bank robbery in violation of § 2113(a)." 645 F.3d 883, 891 n.1 (7th Cir. 2011) (declining to consider issue after determining intent question irrelevant where issue raised was *actus reus* not *mens rea*). The court left the question open, noting that it "need not decide the issue to address defendants' argument here."

The most persuasive argument in support of Defendant's position is that, because § 2113(a) is similar to the common-law crime of robbery, and because attempted robbery is a specific intent crime (see *People v. Cruz*, 248 Ill. App. 3d 473, 475 (1993)), courts should assume that attempted robbery under § 2113(a) requires the same elements as its common-law predecessor, at least absent Congress' indication (whether in text or legislative history) of an intent to supplant the common-law scheme. See, *e.g., Carter v. United States*, 530 U.S. 255, 264 (2000). This appears to be the approach of the Seventh Circuit in regard to the Hobbs Act, which employs a similar statutory scheme to § 2113 robbery and criminalizes robbery and attempted robbery that interferes with commerce or the movement of any article or commodity in commerce.[3] See *United States v. Villegas*, 655 F.3d 662, 668 (7th Cir. 2011) ("To prove an attempt, the government had to show only that Villegas acted with *specific intent* to commit the underlying offense, that is, that he intended to perform a robbery, and took a substantial step toward its completion.") (emphasis added); see also *United States v. Bailey,* 227 F.3d 792, 797 (7th Cir. 2000) ("To prove an attempt, the government must have shown only that Bailey acted with specific intent to commit the underlying offense, that is, that he intended to perform a

---

[3] The Hobbs Act, which, like § 2113, includes a "force" or "violence" component, defines robbery as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property * * *." 18 U.S.C. § 1951(b)(1).

robbery, and took a substantial step toward its completion.") (citing *United States v. Dennis,* 115 F.3d 524, 534 (7th Cir. 1997)).

But that line of argument as it pertains to § 2113 was explicitly rejected by the Supreme Court in *Carter v. United States*. *Id.* Although *Carter* dealt whether subsection (b) of § 2113 was a lesser included offense of subsection (a) (the Court held that it was not), and not whether attempted robbery should include a specific intent requirement, the Court dissected the statutory language of § 2113 in reaching its conclusion. First, the Court determined that, because Congress did not employ a common-law term such as robbery or larceny in the text of § 2113, "the canon on imputing common-law meaning has no bearing" in considering the text of § 2113(a). *Id.* at 267. In other words, because the language in § 2113 does not reference common law terms, a court should not automatically read common-law principles into the statute. The Court also expressly declined to read a specific intent requirement to be implicitly present in § 2113. *Id.* at 267-69. Instead, the Court concluded that the first paragraph of subsection (a) only requires proof of general intent—that is, "that the defendant possessed knowledge with respect to the *actus reus* of the crime (here, the taking of property of another by force and violence or intimidation)." *Id.* at 268. The Court concluded that requiring only general intent for a first-paragraph bank robbery "separate[s] wrongful conduct from 'otherwise innocent conduct'" (*Id.* at 269 (quoting United States v. X-Citement Video, Inc., 513 U.S. 64, 72 (1994)):

> Section 2113(a) certainly should not be interpreted to apply to the hypothetical person who engages in forceful taking of money while sleepwalking (innocent, if aberrant activity), but this result is accomplished simply by requiring * * * general intent— *i.e.,* proof of knowledge with respect to the *actus reus* of the crime. And once this mental state and *actus reus* are shown, the concerns underlying the presumption in favor of scienter are fully satisfied, for a forceful taking—even by a defendant who takes under a good-faith claim of right—falls outside the realm of the "otherwise innocent." Thus, the presumption in favor of scienter does not justify reading a specific intent requirement—"intent to steal or purloin"—into § 2113(a).

7

*Id.* at 269-70.

In short, although discussing § 2113(a) in the context of a bank robbery, and not an attempted bank robbery as is charged in this case, the Supreme Court's parsing of § 2113(a) makes fairly clear its view that the first paragraph of § 2113(a) does not include a specific intent requirement for attempted bank robbery. The Supreme Court hints, and other cases definitely state, that this is so because acts that include taking or attempted taking "by force and violence, or by intimidation * * * describe acts which, when performed, are so unambiguously dangerous to others that the requisite mental element is necessarily implicit in the description." *United States v. DeLeo*, 422 F.2d 487, 491 (1st Cir. 1970); see also *United States v. Brown*, 547 F.2d 36, 39 (3d Cir. 1976). This comports with the Seventh Circuit's view that, in crimes involving "force and violence" or "intimidation," a defendant must do more than attempt to use force and violence or intimidation; rather, the government must prove actual "force and violence" or "intimidation," even in an attempted bank robbery. See *United States v. Thornton*, 539 F.3d 741, 747 (7th Cir. 2008) (holding that the first paragraph of § 2113(a) "requires actual intimidation for a conviction"); but see *Darby*, 857 F.2d at 626 (concluding that government need only prove an intent to use force and violence, or intimidation, in contrast with the Seventh Circuit's requirement that the government prove that the defendant actually used force and violence, or intimidation, in an attempted bank robbery case).

It also comports with the structure of § 2113. Section 2113 sets forth six offenses. Specific intent is incorporated in two: entering a bank with intent to commit a felony (second paragraph of § (a)) and taking property with intent to steal (§ (b)). The other four offenses—taking property of a bank by force and violence or intimidation (first paragraph of § (a)), receiving bank property known to have been stolen (§ (c)), assaulting a person in the course of an

offense (§ (d)), and killing or kidnapping a person in the course of an offense (§ (e))—include no specific intent element.[4] The two offenses that include a specific intent element describe what could be innocent acts—taking or entering—absent felonious intent. In contrast, taking property by force and violence, receiving property known to be stolen, assaulting a person, and kidnapping or killing a person could reasonably be considered "so unambiguously dangerous to others that the requisite mental element is necessarily implicit in the description." *DeLeo*, 422 F.2d at 491.

Relying primarily on the Supreme Court's reasoning in *Carter*, the Court follows the guidance of the Eighth Circuit and concludes that Congress did indeed evince an intent to supplant the common-law scheme by including an intent requirement in the second, but not first, paragraph of § 2113(a). The first paragraph of § 2113(a), pursuant to which Defendant is charged, describes a general intent crime. *Johnston*, 543 F.2d at 58. Thus, the Court concludes that attempted bank robbery, like bank robbery, is a general intent crime and voluntary intoxication is not a defense that Defendant can assert in this case.

### B.     Intoxication and Intimidation

As the Government concedes, force and violence, or intimidation, is an essential element of the offense of attempted bank robbery under 18 U.S.C. § 2113(a). As previously set forth, § 2113(a) defines the offense of attempted bank robbery as follows: "[w]hoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, * * * money * * * in the care, custody, control, management, or possession of, any bank." 18 U.S.C. § 2113(a). The Government must prove "actual force and violence or intimidation * * * for a conviction under the first paragraph of § 2113(a), whether the defendant succeeds (takes) or

---

[4] See *Durham*, 645 F.3d at 891 n.1 (7th Cir. 2011) (noting that "§ 2113(a) contains no explicit mens rea requirement, and it is well established that bank robbery under § 2113(a) is a general intent crime, not a specific intent crime").

fails (attempts to take) in his robbery attempt." *United States v. Thornton*, 539 F.3d 741, 747 (7th Cir. 2008).

Intimidation under § 2113(a) is defined as "'saying or doing something in such a way as would place a reasonable person in fear.'" *Id.* (quoting *United States v. Burnley,* 533 F.3d 901, 903 (7th Cir. 2008)). "Intimidation is the threat of force, which 'exists in situations where the defendant's conduct and words were calculated to create the impression that any resistance or defiance * * * would be met with force.'" *Id.* (quoting *Burnley,* 533 F.3d at 903). The intimidation inquiry is an objective one: "would the defendant's words or acts cause an ordinary person to reasonably feel threatened under the circumstances." *Id.* (citing *United States v. Clark,* 227 F.3d 771, 775 (7th Cir. 2000)).[5]

Here, the Government must demonstrate that a reasonable person would have felt threatened by Defendant Carter during the attempted bank robbery on June 14, 2013. Thus,

---

[5] Seventh Circuit case law provides several examples of what conduct amounts to intimidation. In *Burnley*, the court emphasized that "[c]redibly implying that a refusal to comply with a demand for money will be met with more forceful measures is enough" to prove intimidation. *Burnley,* 533 F.3d at 903. The *Burnley* defendants entered the banks, conveyed to the tellers their demands for the banks' money, and made it clear that they wanted no dye packs or bait bills. The tellers understood that the demands were not mere requests which could be ignored, but rather, felt compelled to comply. *Id.* at 902-03. The court held that evidence sufficient to support the finding of intimidation. *Id.* at 903-04. Similarly, in *United States v. Clark,* the defendant entered the bank, approached the teller and slid a note across the counter which instructed: "[R]emain calm and place all of your twenties, fifties, and hundred dollar bills on the counter and act normal for the next fifteen minutes." The teller was unsure what was happening and asked the defendant, "Huh?" to which he responded, "Yes, Ma'am, this is a holdup." 227 F.3d 771, 772-73 (7th Cir. 2000). The Seventh Circuit held that the combination of the defendant's actions amounted to intimidation, indicating that it was reasonable for the teller to fear that the defendant "might use physical force to compel satisfaction of his demand for money." *Id.* at 775. Likewise, in *United States v. Hill*, the defendant entered the bank, approached a teller and, while at arm's length from her, demanded, "Give me all your money" and added, "[D]on't give me any of the funny money." The teller complied, but not fast enough to suit the defendant, so he warned, "Hurry up, hurry up, bitch." 187 F.3d 698, 699-700. The court held that the defendant's actions could be considered intimidation even though he did not expressly threaten the bank teller, he did not carry a weapon, he spoke softly, and he was not an imposing figure. *Id.* at 701. The Seventh Circuit has noted that all of these cases share two critical facts: the defendant entered the bank and made a demand for money. See *Thornton*, 539 F.3d at 749.

Carter's actions are squarely at issue, including the way Carter walked, stood, talked (including the tone and volume of his voice), dressed, and comported himself in general, whether he had a weapon or used a note, and whether he came across as dangerous or intimidating, or perhaps hapless.  Evidence about Carter's behavior does not go to whether Carter had the requisite intent to rob the bank; as previously set forth, Carter will not be able to use his intoxication as a defense to the attempted robbery charge.  Rather, evidence of Carter's drunkenness goes to whether he could have intimidated a reasonable person under the circumstances.  Thus, Defendant will be allowed to present evidence and argument about Carter's drunkenness on the day in question, so long as defense counsel steers clear of implying that Carter's drunkenness bears on his intent to commit the crime.  In other words, the focus of the testimony at trial must be on negating the intimidation element, not on intent.

### C. Jury Instructions

Both sides have requested jury instructions pertaining to Defendant's intoxication on the day in question.  At this time, the Court reserves ruling on both sides' requests for jury instructions regarding Defendant's intoxication, although the Court notes that, based on the reasons stated in assessing § 2113(a)'s intent requirement, Seventh Circuit Pattern Jury Instruction § 6.09 on Voluntary Intoxication does not appear to be relevant to the circumstances in this case.  See *United States v. Reed*, 991 F.2d 399, 400–01 (7th Cir. 1993) (intoxication is a defense to specific intent crimes, but it is not a defense to general intent crimes).  The Court will confer with counsel on the first day of trial in regard to the specific language of the jury instructions.

### III. Conclusion

For these reasons, the Court grants in part and denies in part Defendant David Carter's notice of intoxication defense and request for pretrial ruling on admissibility of evidence and jury instruction [24] and the Government's motion to exclude argument regarding intoxication [26] and reserves ruling on the parties requests for jury instructions regarding Defendant's intoxication.

Dated: October 7, 2014

_____
Robert M. Dow, Jr.
United States District Judge